## POTTER *vs.* CRANDALL and others.

A purchased a farm of a widow and several heirs. He executed simultaneous mortgages for the purchase money—to the widow, for the interest of one-third part of the purchase money, payable annually during her life—to each of the heirs, for their proportionate share of the purchase money, payable in installments with interest, and for their proportionate share of the widow's interest after her death. All these mortgages covered the same farm and were simultaneously executed. One of the heirs, upon default in his mortgage, files a bill against A, and his mother, and co-heirs, to foreclose his mortgage. Decided that he cannot have a decree without the refusal of his mother and co-heirs to become parties with him; nor in any event, unless the whole rights are set forth in the complainant's bill.

THIS is a bill for the foreclosure of a mortgage, dated July 8, 1836, executed by the defendant

Crandall to the complainant, to secure $941 40 in installments, a part of which was payable after the termination of the life of Hannah Potter, widow of Daniel Potter, deceased. Hannah Potter, the widow, and the other heirs (except the complainant) of Daniel Potter, deceased, are made defendants together with incumbrancers. The bill prays in the usual form, payment of the mortgage money to the complainant—that the premises may be sold for that purpose—and that the interest of all the defendants may be foreclosed therein.

Crandall puts in a general answer, denying the whole matters of the bill; and as to him, proofs are taken which sustain the material allegations in the bill.

The widow and heirs of Daniel Potter, deceased, other than the complainant, put in a joint answer, in which they allege that they, together with the complainant, joined in a conveyance of the mortgaged premises to the defendant, John G. Crandall; and that, on such sale, an arrangement was made between the said widow and heirs (including the complainant) to dispose of the purchase money as follows:

1. One-third thereof, or $2,353 42, was to be set apart as the dower of Hannah Potter, and she was to have the interest thereof secured to her during her life.

2. The two other third parts were to be rateably divided among the heirs.

3. The widow's third was also to be divided in like manner among the heirs, payable to them after the widow's death.

In pursuance of this arrangement, the defendant

Crandall executed a mortgage to the widow for the payment of the annual interest of the sum set apart to her during her life.

He also executed several bonds and mortgages to each of the heirs (among which is the complainant's mortgage sought to be foreclosed) for their respective shares, payable in installments, with interest; and one installment to each heir, payable immediately upon the death of the widow, without interest.

These bonds and mortgages (including that described in the complainant's bill, each cover the whole farm, (the mortgaged premises in this cause,) they all bear the same date, and were all simultaneously executed and delivered. The bonds and mortgages of the widow and heirs are all severally set out in their joint answer; and they insist that in case a decree is made for the complainant, provision should be made for the payment of these defendant's mortgages *pro rata* with that of the complainant, and that the widow's share should be deposited so as to secure her income. And they submit to the decree of the court. Hannah Potter, the widow, is yet living. The answer of herself and the other heirs, is admitted to be true.

*S. Boughton*, for complainant.

*O. Hastings*, for defendant Crandall.

THE VICE CHANCELLOR. The mortgages of the widow, the complainant, and the other heirs of Daniel Potter, all cover the same identical premises, the same farm. They all bear the same date, were executed and delivered simultaneously, and were for different portions of the purchase money of the same

property. The contract of sale was joint, though the contracts to pay were several. There can be no doubt in equity, that these several mortgages can have no preference as among themselves, unless, perhaps, the widow might be deemed to be entitled to a preference. The complainant asks in his bill, that the premises may be sold, and he himself paid, and all the other defendants foreclosed. It is inequitable that, as to him, this prayer should be granted, as it may defeat the rights of others who have equal equities with himself. The other members of this family, it is true, are willing to have the premises sold if they can be paid their rateable proportions of the proceeds of the sale; but as to them, the defendant Crandall has had no day in court. He has had no opportunity of contesting the validity of their claims, and, consequently, this mode of disposing of the property cannot be adopted. A decree in favor of the complainant according to the prayer of his bill, would give him a preference over his mother and co-heirs—a preference which could not be remedied under such a decree, by proceedings for a distribution of the surplus. I could not grant such a decree even if this class of defendants should stipulate with the complainant to permit him to take such decree upon condition of dividing with them rateably the proceeds of the sale. This would be indirectly depriving the defendant Crandall of the credit on one-third of the purchase money until the widow's death, for which credit he had stipulated on the purchase. It would have this effect, particularly if, as is suggested, the mortgaged premises cannot with propriety be sold in parcels. And the defendant Crandell has had no opportunity of making a defence against these

claims of his co-defendants. The proper course for the complainant to pursue is, to ask his mother and co-heirs to join with him in foreclosing all these mortgages in one bill—if any refuse, he can then make such as refuse, defendants. He should set forth all the circumstances in his bill, of the simultaneous execution of the mortgages; and then the court can make a decree which will satisfactorily dispose of the rights of all the parties, whether some of them are reluctant to proceed or not. But under the prayer of the present bill, I can give no decree which will not produce inequitable results. The defendant Crandall, however, has no merits. It was his duty to have paid the installments upon the mortgages, as they became due. I shall therefore dismiss the complainant's bill, without costs as to Crandall, but with costs as to the other defendants who have appeared, but without prejudice to the right of the complainant to file a new bill for the same matter.